1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

YASH KAMAT,

          Plaintiff,

    v.

UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES,

          Defendant.

CASE NO. 2:23-cv-01133-JHC

ORDER GRANTING MOTION TO DISMISS

# I

## INTRODUCTION

This immigration matter comes before the Court on Defendant United States Citizenship and Immigration Services' ("USCIS") Motion to Dismiss the Complaint Pursuant to FRCP 12(b)(6).  Dkt. # 8.  Plaintiff Yash Kamat seeks an order compelling USCIS to adjudicate his Form I-526 petition within 14 days, contending that USCIS's delay in processing his immigrant visa petition is unreasonable.  *See* Dkt. # 1 at 1–2, 24–25.  USCIS seeks dismissal, asserting that USCIS has not "unreasonably delayed" the adjudication of Kamat's petition under the Administrative Procedure Act ("APA").  *See* Dkt. # 8 at 1.  Applying the six-factor "*TRAC*" balancing test, *see Telecomms. Rsch. & Action Ctr. v. FCC,* 750 F.2d 70, 79 (D.C. Cir. 1984), and for the reasons discussed below, the Court finds that USCIS's adjudication delay is not

1

2

unreasonable and that Kamat is not entitled to the relief he seeks under the APA.  Accordingly, the Court GRANTS the motion to dismiss (Dkt. # 8) and DISMISSES this matter.

## II
### BACKGROUND

Yash Kamat is a citizen of India and lives in Issaquah, Washington.  Dkt. # 1 at 2 ¶ 1. He invested at least $500,000 in a new commercial enterprise called The League Network.  *Id.* at 4 ¶ 24.  On September 30, 2021, Kamat filed a Form I-526 petition, "Immigrant Petition by Alien Entrepreneur," based on this investment.  *Id.* at 4 ¶ 27.

The EB-5 (employment-based, fifth preference) visa program allows noncitizens[1] a pathway to permanent residency if they invest a certain amount of money in a qualifying new commercial enterprise that "will benefit the United States economy by creating full-time employment for not fewer than 10 United States citizens, United States nationals," or certain other residents.  *See* 8 U.S.C. § 1153(b)(5)(A).  A person seeking classification as an EB-5 investor must submit a Form I-526 petition to USCIS.  *See* 8 C.F.R. § 204.6.

After establishing the EB-5 program, Congress created another pathway to qualify for an EB-5 visa called the "Regional Center Program."  *See* Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act of 1993, Pub. L. No. 102-395, § 610, 106 Stat. 1828, 1874–75 (1992).  Under the Regional Center Program, EB-5 petitioners pool "their investments with 1 or more qualified immigrants" into "a regional center in the United States, which has been designated by the Secretary of Homeland Security on the basis of a proposal for the promotion of economic growth, including prospective job creation and increased domestic capital investment."  8 U.S.C. § 1153(b)(5)(E)(i).

---

[1] The Court uses the term "noncitizen" as equivalent to the statutory term "alien." *See*, *e.g.*, *Nasrallah v. Barr*, 140 S. Ct. 1683, 1689 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

The Immigration and Nationality Act ("INA") states that employment-based visas "shall be issued to eligible immigrants in the order in which a petition on behalf of each such immigrant is filed." 8 U.S.C. § 1153(e)(1); Immigration Act of 1990, Pub. L. No. 101-649, § 121(a) (1990). The Court refers to this "first-in, first-out" approach as the "priority rule." *See Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 336 (D.C. Cir. 2023) (citing *Meina Xie v. Kerry*, 780 F.3d 405, 408 (D.C. Cir. 2015)).

The INA places annual limits on (1) the number of individuals who can receive EB-5 visas and (2) the percentage of those visas that can be granted to individuals from any given country ("per-country cap"). *See* 8 U.S.C. §§ 1151, 1152, 1153. No more than 7% of employment-based visas may be issued to applicants from a single country of origin unless the total number of EB-5 visas allotted per year would otherwise not be met. 8 U.S.C. § 1152(a)(2), (3). Because of these annual limits, the number of EB-5 petitions submitted per year may exceed the number of available visas allotted to any given employment-based category and country of origin, invariably contributing to wait times for visa processing.

Upon USCIS approval of their Form I-526 petition, a noncitizen may then apply for conditional lawful permanent resident status, which allows the noncitizen the ability "to stand in line for an immigrant visa number to be issued by the Department of State." *Da Costa*, 80 F.4th at 336 (citing *iTech U.S., Inc. v. Renaud*, 5 F.4th 59, 61 (D.C. Cir. 2021) (describing the equivalent process for Form I-140 petition)). Individuals living in the United States apply for residence through "adjustment of status" and, after about one year and nine months, may apply to remove the conditional basis of their lawful permanent resident status. 8 U.S.C. §§ 1186b(a)(1), 1255; 8 C.F.R. §§ 216.1, 216.6(a)(1)(i), 245.2.

This case is about the first step of the EB-5 visa process: USCIS's adjudication of Kamat's Form I-526 petition. In January 2020, USCIS began a new case-assignment process for

Form I-526 petitions, stating that it was implementing a "new operational approach [that] align[ed] with other visa-availability agency adjudications processes, [was] more consistent with congressional intent for the EB-5 Immigrant Investor Program, and increase[d] fairness in the administration of the program." *USCIS Adjusts Process for Managing EB-5 Visa Petition Inventory*, USCIS, https://www.uscis.gov/archive/uscis-adjusts-process-for-managing-eb-5-visa-petition-inventory (last visited Jan. 29, 2024).  This change by the agency did away with its former "priority rule" and instead prioritized petitions associated with "applicants from countries where visas are immediately available [to] be better able to use their annual per-country allocation of EB-5 visas." *Id.*  "The announced amendment to that process sought to avoid delays caused by adhering to first-in, first-out processing of petitions from 'oversubscribed' countries, *i.e.*, those that had already reached their visa limit under the relevant per-country cap." *Da Costa*, 80 F.4th at 336 (D.C. Cir. 2023) (citing *Questions and Answers: EB-5 Immigrant Investor Program Visa Availability Approach*, USCIS, https://perma.cc/9P87-2J7G (last updated Apr. 2, 2021)).  USCIS added that "the oldest Form I-526 petitions [were] primarily from countries that [were] oversubscribed," and, without the modification, "petitioners without visa numbers available would tend to be processed ahead of those with visa numbers available." *Id.*

In July 2023, USCIS again updated its EB-5 "workflow queue," clarifying that when "a visa is available (or will be available soon) and the underlying project has been reviewed . . . [the] queues are generally managed in first-in, first-out (FIFO) order when a visa is available or will be available soon." *Update to Visa Availability Approach for Form I-526*, USCIS, https://www.uscis.gov/working-in-the-united-states/permanent-workers/employment-based-immigration-fifth-preference-eb-5/update-to-visa-availability-approach-for-form-i-526 (last updated July 18, 2023).  USCIS stated, "The purpose of updating the visa availability approach is to enable USCIS to increase productivity and more efficiently process Form I-526 petitions." *Id.*

1

2

3

Under this new "visa availability inventory management approach, [the USCIS Immigrant Investor Program Office] determines visa availability and queues up the Form I-526 inventory into three workflows on a monthly basis." *Id.*

4

5

6

7

8

9

10

11

12

13

14

15

16

Despite these changes in 2020 and 2023, USCIS's processing of Form I-526 has continued to significantly slow. According to USCIS, the median processing time for Form I-526 in Fiscal Year ("FY") 2019 was 19 months; FY20, 31.1 months; FY21, 32.5 months; FY22 44.2 months; FY23, 50 months; and FY24 51.8 months.[2] *Historic National Median Processing Time (in Months) for All USCIS Offices for Select Forms By Fiscal Year*, USCIS, https://egov.uscis.gov/processing-times/historic-pt (last visited Jan. 29, 2024). As of November 30, 2023, the median time for Form I-526 petition adjudication was 52.2 months. *Id.* These increased delays are likely related to the COVID-19 pandemic and a nine-month gap in congressional authorization for the Regional Center Program, which paused all Form I-526 petitions based on the Regional Center Program. *See Da Costa*, 80 F.4th at 337–38. Then in March 2022, Congress passed the EB-5 Reform and Integrity Act of 2022 and resumed funding for this program. *Id.* at 336 (citing Consolidated Appropriations Act 2022, Pub. L. No. 117-103, 136 Stat. 49 (2022)).

17

18

19

20

Since filing his Form I-526 petition around 28 months ago, Kamat alleges that USCIS has taken no action on his application. Dkt. # 1 at 4 ¶ 29. Kamat asserts that USCIS's delay on adjudication of his EB-5 application is unreasonable, thus violating the APA. *See* Dkt. ## 1, 11; 5 U.S.C. § 555(b).

21

22

23

24

---

[2] These figures reflect "the most up-to-date estimate available at the time the database is queried"; the "FY2024 [estimate] uses data from October 1, 2023 to December 31, 2023." *See Historic National Median Processing Time (in Months) for All USCIS Offices for Select Forms By Fiscal Year*, USCIS, https://egov.uscis.gov/processing-times/historic-pt (last visited Jan. 29, 2024).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

# III

## DISCUSSION

A.    Legal Standards

      1.    Motion to dismiss

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court construes the complaint in the light most favorable to the nonmoving party. *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005). The court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

      2.    Unreasonable delay under the APA

Under the APA, a reviewing court may "compel agency action unlawfully withheld or unreasonably delayed[.]" 5 U.S.C. § 706(1). "[A] claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis in original). "The central question in evaluating 'a claim of unreasonable delay' is 'whether the agency's delay is so egregious as to warrant mandamus.'" *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting *Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 79 (D.C. Cir.1984)).

For determinations of whether agency delays are unreasonable under the APA, the Ninth Circuit has adopted the "*TRAC*" factors, a six-factor balancing test.[3]  *Telecomms. Rsch.*, 750 F.2d at 79–80; *see Vaz v. Neal*, 33 F.4th 1131, 1137 (9th Cir. 2022).  The factors are:

(1) the time agencies take to make decisions must be governed by a "rule of reason";

(2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

(3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

(4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

(5) the court should also take into account the nature and extent of the interests prejudiced by delay; and

(6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is "unreasonably delayed."

*Telecomms. Rsch.*, 750 F.2d at 80 (citations and quotations omitted).

B.    Analysis

The Court's analysis turns on whether the circumstances Kamat alleges, if proved, would show USCIS to have unreasonably delayed adjudicating his petition.  After consideration of the briefing, applicable law, and "*TRAC*" factors, the Court concludes that Kamat has not stated a claim that USCIS unreasonably delayed adjudicating his I-526 petition.  For the reasons outlined below, the Court GRANTS the motion to dismiss.  *See* Dkt. # 8.

---

[3] Throughout this order, the Court relies on opinions by the D.C. Circuit.  "The D. C. Circuit's decision[s are] not binding on this Court, but [they are] particularly persuasive in this context as the Ninth Circuit has looked to the 'more developed law of the District of Columbia Circuit' in its unreasonable delay decisions."  *Kalinowsky v. Mayorkas*, No. 22-cv-7209, 2023 WL 6165708, at *5 n.8 (N.D. Cal. Sept. 20, 2023) (quoting *In re Nat. Res. Def. Council, Inc.*, 956 F.3d 1134, 1139 (9th Cir. 2020)).

1

       1.       First *TRAC* factor: Rule of reason

2

       Factor one is the most important factor of the *TRAC* balancing test.  *In re Nat. Res. Def.*

3

*Council, Inc.*, 956 F.3d 1134, 1139 (9th Cir. 2020).  It requires that "the time agencies take to

4

make decisions [] be governed by a 'rule of reason.'"  *Da Costa*, 80 F.4th at 340 (quoting

5

*Potomac Elec. Power Co. v. ICC*, 702 F.2d 1026, 1034 (D.C. Cir. 1983)).  To assess whether an

6

agency follows a rule of reason, a court evaluates the length of the delay in light of "the

7

complexity of the task at hand, the significance (and permanence) of the outcome, and the

8

resources available to the agency."  *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336

9

F.3d 1094, 1102 (D.C. Cir. 2003).  The court must also consider "whether the time for agency

10

action has been reasonable." *Nat. Res. Def. Council*, 956 F.3d at 1139.

11

       In its motion to dismiss, USCIS contends that "[t]he first *TRAC* factor favors USCIS

12

because the time it takes for USCIS to adjudicate Form I-526 petitions is governed by a rule of

13

reason.  USCIS manages Form I-526 petitions by prioritizing petitions for individuals from

14

countries where visas are currently available or soon to be available[,]" aligning with

15

Congressional intent for the EB-5 immigrant investor program.  Dkt. # 8 at 8 (citing *USCIS*

16

*Adjusts Process for Managing EB-5 Visa Petition Inventory*, USCIS,

17

https://www.uscis.gov/archive/uscis-adjusts-process-for-managing-eb-5-visa-petition-inventory

18

(last visited Jan. 29, 2024)).  According to USCIS, its updated approach to "increase efficiencies

19

and reduce the backlog" demonstrates that its "management of I-526 petitions is governed by a

20

rule of reason and an 'identifiable rationale.'"  *Id.* at 9 (citing *Ctr. for Sci. in the Pub. Interest v.*

21

*FDA*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014)); *see also Jain v. Renaud*, No. 21-3115, 2021 WL

22

2458356, at *4 (N.D. Cal. June 16, 2021) ("Indeed, all of the district courts that have considered

23

24

this question have concluded that the visa availability approach satisfies the first *TRAC* factor." (collecting cases)).

USCIS further maintains that the Ninth Circuit has not held " that there must be a deadline for a rule of reason to exist."  Dkt. # 8 at 10 (citing *Neighbors Against Bison Slaughter*, No. 21-35144, 2022 WL 1315302 (9th Cir. May 3, 2022)).  USCIS also asserts that the time Kamat's Form I-536 petition has been pending is not unreasonable, highlighting that Kamat has been waiting less time than other petitioners, as reflected in USCIS's median processing times. *Id.*; *see Jain*, 2023 WL 2769094, at *3 (adjudications pending longer than two years are not unreasonable).

Kamat responds that USCIS misconstrues the meaning of the "rule of reason," stating that it is "not about whether an agency has processing logic; rather the first *TRAC* factor teaches that the timing of agency action is governed by a rule of reason."  Dkt. # 11 at 3 (citing *Doe v. Risch*, 398 F. Supp. 3d 647, 655 (N.D. Cal. 2019)) (internal quotations omitted).  Kamat says that he has made three "specific, nonconclusory" claims that support his argument "that the Agency has no rule that governs the time it takes to adjudicate an EB-5 petition and, if it does, the Agency does not follow it."  *Id.* (citing Dkt. # 1 at 6–7 ¶¶ 46-89).

The Court disagrees and concludes that USCIS applies a rule of reason to adjudicate Form I-526 petitions.  The Court addresses Kamat's three arguments below:

First, Kamat alleges that "USCIS unlawfully expedited at least 271 EB-5 petitions for Odlum Equestrian Lenders, LLC and the Tryon International Equestrian Center and Resort ('Tryon') between 2017 and 2021."  *Id.* at 4; *see* Dkt. # 1 at 6–9 ¶¶ 46-59.  Kamat asserts that this "unprecedented, project-wide expedite"—which Kamat concedes ceased in late May 2021—is evidence of the "misuse" of USCIS's "expedite powers" and shows that there is no rule of reason controlling USCIS's adjudication of Form I-526 applications.  *See* Dkt. # 11 at 4–6.

1    Kamat alleges that USCIS impermissibly expedited 271 Form I-526 petitions related to Tryon

2    and this preferential treatment proves a lack of a "rule of reason." Dkt. # 1 at 8 ¶ 54; Dkt. # 11 at

3    4.

4            The Court disagrees. Kamat filed his Form I-526 petition in September 2021, at least

5    three months after he claims USCIS stopped expediting Tryon-related petitions. It is undisputed

6    that these 271 expedited petitions were submitted and adjudicated well before the July 2023

7    announcement of USCIS's new EB-5 "workflow queue" management, the approach that governs

8    adjudication of Kamat's pending petition. *See Update to Visa Availability Approach for Form I-*

9    *526*, USCIS, https://www.uscis.gov/working-in-the-united-states/permanent-

10   workers/employment-based-immigration-fifth-preference-eb-5/update-to-visa-availability-

11   approach-for-form-i-526 (last updated July 18, 2023); *Gourneni v. Mayorkas*, No. 20-CV-892-

12   CRC, 2021 WL 5178841, at *1 (D.D.C. Nov. 8, 2021). Kamat's insinuations that the special

13   treatment for the Tryon program—which occurred well before Kamat's application—do not

14   support a reasonable inference that these expedited petitions or a related USCIS-wide policy has

15   unreasonably delayed adjudicating Kamat's 2021 petition and thus lacks a rule of reason. *See*

16   *Da Costa*, 80 F.4th at 342–343.

17           Second, Kamat asserts that USCIS has no rule of reason because its "adjudication times

18   have increased despite their resources increasing and the application volume decreasing, and

19   such fluctuation would not occur if USCIS followed a rule of reason." Dkt. # 11 (citing Dkt. # 1

20   at 18 ¶ 89; *Liu v. Mayorkas*, No. 20-CV-654 (CRC), 2021 WL 2115209, at *1 (D.D.C. May 25,

21   2021)).

22           Again, the Court is not convinced. As outlined in *Da Costa*: USCIS "is statutorily

23   required to issue visas in the order the petitions are filed, 8 U.S.C. § 1153(e)(1), and is also

24   constrained by the per-country cap, 8 U.S.C. § 1152(a)(2). USCIS's pre-2020 priority rule

satisfied the bare order-of-filing requirement.  [8 U.S.C.] § 1153(e)(1)."  80 F.4th at 340.  The Court agrees that "USCIS's rule of reason calls for processing Form I-526 petitions from nationals of countries as to which visas are currently available in the order in which those petitions were received" and this rule of reason may contribute to its increasing adjudication times.  *Id.* at 341.

Although Kamat argues that USCIS's rule of reason must control the "timing of the agency action," this argument is misplaced:

> [W]hether agency action is governed by a rule of reason "cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but will depend in large part, as we have said, upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency."

*Jain*, 2023 WL 2769094, at *6 (quoting *Mashpee Wampanoag*, 336 F.3d at 1102).  Further, multiple district courts, and one circuit court, have confirmed that USCIS's "visa availability" approach to processing Form 1-526 petitions satisfies the rule of reason requirement.  *See, e.g.*, *Da Costa*, 80 F.4th at 340–343; *Jain*, 2023 WL 2769094, at *6; *Ramesh v. Mayorkas, et al.*, No. 21-653-DMR, Dkt. # 44 at 9–12 (N.D. Cal. Feb. 7, 2023); *Bega v. Jaddou*, No. CV 22-02171-BAH, 2022 WL 17403123, at *6–*7 (D.D.C. Dec. 2, 2022); *Kalinowsky v. Mayorkas*, No. 22-CV-07209-VKD, 2023 WL 6165708, at *5–*7 (N.D. Cal. Sept. 20, 2023).

Third, Kamat alleges that USCIS "refused" to adjudicate his petition for 8.5 months during a lapse in funding for the Regional Center Program.  Dkt. # 1 at 10–12 ¶¶ 60–66; Dkt. # 11 at 7 (citing *Behring Reg'l Ctr. LLC v. Mayorkas*, No. 22-CV-02487-VC, 2022 WL 2290594, at *5 (N.D. Cal. June 24, 2022)).  Kamat contends that because the INA's statutory language does not contain an expiry date for the Regional Center Program, Congress never intended the program to lapse and USCIS's delay in adjudication of those immigration forms was impermissible.  Dkt. # 11 at 7–9.  By way of background:

1
2
3
4
5
6
7
8
9
10

Congressional authorization for the Regional Center program expired in accordance with its then-existing terms on June 30, 2021. Consolidated Appropriations Act of 2021, Pub. L. 116-120, div. O, title I, § 104, 134 Stat. 1182, 2148 (substituting "June 30, 2021" for "September 30, 2015" in § 610(b) of Pub. L. 102-395). Once the program lapsed, USCIS stopped adjudicating Regional Center-based Form I-526 petitions. USCIS placed then-pending petitions on hold, allowing petitioners . . . to maintain their place in the adjudication workflow

In March 2022, President Biden signed a Consolidated Appropriations Act, which included the EB-5 Reform and Integrity Act of 2022 and provided authority for a reformed Regional Center program through September 30, 2027. 8 U.S.C. § 1153(b)(5)(E)(i). The EB-5 Reform and Integrity Act repeals prior legislation authorizing the Regional Center program, but includes certain "grandfathering" provisions which permit adjudication of Form I-526 petitions filed before March 15, 2022, according to the eligibility requirements in place at the time such petitions were filed. Accordingly, since enactment of this new legislation, USCIS has resumed processing Regional Center-based Form I-526 petitions filed on or before expiration of the statutory authorization of the legacy Regional Center program.

11
12
13
14
15
16
17

*Jain*, 2023 WL 2769094, at *2 (certain citations omitted). "Several courts have considered the lapse of authorization and USCIS's suspension of adjudications; none have concluded that the suspension was unlawful." *Id.* at *10 (collecting cases). The statutory history related to this lapse in funding for the Regional Center Program is clear—and despite Kamat's assertions to the contrary—his position is incorrect. Kamat offers no plausible allegations from which the Court could reasonably infer that USCIS's processing does not follow a "rule of reason."

18
19
20
21
22
23
24

Furthermore, the total time that Kamat has been waiting for adjudication is not unreasonable. The Court, in reviewing an agency's delays, may allow a claim to proceed if the delay is unreasonable under the APA. Kamat has waited about 28 months, far less than the current 51.8-month median processing time for FY24; this delay is too short to indicate that USCIS does not follow a rule of reason. *Historic National Median Processing Time (in Months) for All USCIS Offices for Select Forms By Fiscal Year*, USCIS, https://egov.uscis.gov/processing-times/historic-pt (last visited Jan. 29, 2024); *See Jain*, 2023

WL 2769094, at *8 (collecting cases) (plaintiffs' petitions were pending for 40–48 months and this delay was not unreasonable); *Da Costa*, 80 F.4th at 342 ("Here, the length of the [four-and-a-half-year] wait alone is not sufficient to show that USCIS does not follow a rule of reason in processing EB-5 applications.").

For these reasons, the first *TRAC* factor favors USCIS.

2.      Second *TRAC* factor: Congressional deadline

*TRAC* factor two asks whether Congress set a deadline for agency adjudication of Form I-526. *Telecomms. Rsch.*, 750 F.2d at 80. USCIS maintains that there is no deadline date by which USCIS must adjudicate these forms and therefore the Court must determine whether Kamat's 28-month wait is per se unreasonable. Dkt. # 8 at 11 (citing *Throw v. Mayorkas*, 22-cv-5699-DGE, 2023 WL 2787222, at *4 (W.D. Wash. Apr. 5, 2023) ("Where Congress has not supplied a time period for agency action, as here, the Court looks to caselaw to determine whether an agency's action is unreasonably delayed.")). USCIS contends that Kamat's wait time is not unreasonable and the second factor goes in its favor. *Id.* (citing *Yavari v. Pompeo*, No. 2:19-cv-2524, 2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019) ("District courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable.")).

Kamat responds that Congress intended for EB-5 petitions to be decided with a strict 180-day deadline. Dkt. # 11 at 9–11 ("More recently, [C]ongress reinforced this 180-day timeline when it passed the EB-5 Reform and Integrity Act of 2021, H.R. 2901 (Mar. 15, 2022)."); Dkt. # 1 at 18–19 ¶¶ 90–95. Kamat references this language from 8 U.S.C. § 1571(b) to support his position: "It is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application[.]" *See* Dkt. # 1 at 18–19 ¶ 92, 94. Kamat concludes that the second *TRAC* factor "is

1    simply to determine whether Congress intended any time frames, which these clearly do.

2    [Therefore] Mr. Kamat's allegations are entitled to a presumption of veracity."  Dkt. # 11 at 11.

3           The Court is not convinced.  The INA's precatory provision plainly outlines a view, not a

4    mandate, evinced by the language "[i]t is the sense" that a petition "should" be completed before

5    180 days.  8 U.S.C. § 1571(b); *see, e.g.*, *Yang v. Cal. Dep't of Soc. Servs.*, 183 F.3d 953, 958,

6    961–62 (9th Cir. 1999) ("the sense of Congress provision amounts to no more than non-binding,

7    legislative dicta" and does not create enforceable rights or duties).  Yet "even though the

8    language is insufficient to set a deadline," the Court "can look to Congress's aspirational

9    statement as "a ruler against which the [agency's] progress must be measured."  *Da Costa*, 80

10   F.4th at 344 (citing *In re Pub. Emps. for Env't Resp.*, 957 F.3d 267, 274 (D.C. Cir. 2020)).

11   Accordingly, because Kamat has waited longer than Congress's intended 180-day adjudication,

12   the second factor weighs slightly in his favor as "the delay has not reached the level of

13   disproportionality [courts have] previously held sufficient to grant relief."  *Da Costa*, 80 F.4th at

14   344 (citing *In re Pub. Emps.*, 957 F.3d at 273–74).

15          3.      Third and fifth *TRAC* factors: Nature and extent of interests

16          *TRAC* factors three and five apply similarly, so the Court considers them together.  *See,*

17   *e.g.*, *Indep. Min. Co. v. Babbitt*, 105 F.3d 502, 509 (9th Cir. 1997); *Islam v. Heinauer*, 32 F.

18   Supp. 3d 1063, 1073 (N.D. Cal. 2014).  Factor three cautions that "delays that might be

19   reasonable in the sphere of economic regulation are less tolerable when human health and

20   welfare are at stake[.]" *Telecomms. Rsch.*, 750 F.2d at 80.  Factor five echoes a broader

21   sentiment: "[T]he court should also take into account the nature and extent of the interests

22   prejudiced by delay[.]"  *Id.*

23          USCIS contends that "an approved I-526 petition is merely one step in the process

24   towards becoming a lawful permanent resident[,]" and it "does not guarantee that the noncitizen

will become a permanent resident." Dkt. # 8 at 12.  The economic uncertainties Kamat raises

inherent to the immigration process, according to USCIS, "do not justify him moving to the front

of the line." *Id.* at 12–13 (citing *Telles v. Mayorkas*, No. 21-395, 2022 WL 2713349, at *4

(D.D.C. Jul. 13, 2022); *Desai v. U.S. Citizenship & Immig. Servs.*, No. 20-cv-1005, 2021 WL

1110737, at *7 (D.D.C. Mar. 22, 2021)).

Kamat responds that USCIS's delay in processing has hurt his "health and welfare"

because without adjudication he (1) "cannot acquire lawful permanent residency[,]" (2) cannot

accrue "time towards naturalization[,]"  and (3) cannot enjoy the various benefits conferred to

legal permanent residents, such as state educational benefits or the ability to change employers

without seeking USCIS authorization.  Dkt. # 11 at 11 (citing Dkt. # 1 at 19–20 ¶¶ 96–97).

Kamat also alleges potential financial repercussions, stating that his "investment will be re-

deployed, put at further risk, and potentially put out of [his] reach for years."  *Id.*

Kamat's position is not persuasive.  The Court sympathizes with the potential

consequences Kamat faces as he awaits a response from USCIS.  Yet approval of his Form I-526

petition is only the first step in achieving legal permanent residency and the harms Kamat cites

related to this delayed adjudication are largely economic and lifestyle impacts.  Kamat does not

allege that he will lose his current immigration status, or that he has actually experienced adverse

economic impacts related to USCIS's delay.  The Court notes that such

> health and welfare-related concerns do not rise to a level sufficient to support a
> finding that this consideration favors granting relief.  Courts . . . have found that
> where a plaintiff does not show "any immediate risk of deportation or impairment
> to his physical, financial, or safety needs if his application is not immediately
> adjudicated," the third and fifth *TRAC* factors weigh in favor of denying relief.

*Jain*, 2023 WL 2769094, at *8 (citing *Beyene v. Napolitano*, No. 12-cv-1149-WHA, 2012 WL

2911838, at *8 (N.D. Cal. July 13, 2012)).  Kamat's allegations of uncertainty due to his

immigration status are neither compelling nor distinguishable from the risks all EB-5 petitioners

take when applying for such a visa.  Furthermore, if USCIS were to adjudicate Kamat's Form I-526 petition, he would not necessarily be guaranteed legal permanent residency.  *See Kalinowsky*, 2023 WL 6165708, at *8 (citing *Tongatapu Woodcraft Hawaii, Ltd. v. Feldman*, 736 F.2d 1305, 1308 (9th Cir. 1984) ("An approved visa petition is merely a preliminary step in the visa application process. . . .  It does not guarantee that a visa will be issued, nor does it grant the [noncitizen] any right to remain in the United States.")).  For these reasons, the Court concludes that the third and fifth *TRAC* factors favor USCIS.

> 4.      Fourth *TRAC* factor: Effect of expediting delayed action

As for the fourth *TRAC* factor, the Court must consider the effect of ordering the immediate adjudication of plaintiffs' applications "on agency action of a higher or competing priority." *Telecomms. Rsch.*, 750 F.2d at 80.

By prioritizing Kamat's Form I-526 petition, USCIS contends that it would be "diverting resources away from others' immigration requests, unreasonably favoring Kamat over all other noncitizens that also seek Form I-526 immigration benefits from USCIS."  Dkt. # 8 at 13 (citing *Da Costa*, 2023 WL 5313526, at *8 ("[A] court order requiring USCIS to adjudicate the Plaintiffs' Form I-526 petitions would move them ahead of longer-pending petitions.")).

Kamat counters that USCIS has "no higher priority than adjudicating EB-5 petitions and compelling action would not harm USCIS."  Dkt. # 11 at 13 (citing Dkt. # 1 at 20–21 ¶¶ 98–102).  According to Kamat, "there is no adjudication 'line' because USCIS has the ability to adjudicate dozens of Forms I-526 a day.  Thus, an order here would not be pushing Plaintiff to the front of a 'line' because there is no 'line.'" *Id.* at 12–13.  "Kamat also allege[s] that USCIS cannot know whether an order compelling them to make a decision would hurt them because USCIS does not keep the necessary statistics to ensure accountability." *Id.* at 13.

In *Da Costa*, the D.C. Circuit concluded that factor four "strongly disfavor[ed]" plaintiffs who lodged substantively similar arguments as Kamat does here:

> Because USCIS prioritizes adjudication based on the date a petition was filed, 8 U.S.C. § 1153(e); 8 C.F.R. § 204.6(d), a court order requiring USCIS to adjudicate the Plaintiffs' Form I-526 petitions would move them ahead of longer-pending petitions. Indeed, litigation by other Form I-526 petitioners has caused some line jumping.

> Plaintiffs' argument that granting relief would not prejudice other applicants rests on wishful thinking about how the USCIS adjudication system works. The Da Costas and Bega assert that, "[b]ecause USCIS can adjudicate dozens (if not more) Forms I-526 at the same time, this factor does not favor USCIS in the same way it would if USCIS could only adjudicate them one at a time consecutively." Bega takes that claim one step further, alleging that "there is no 'line'" because "USCIS has a pool of Form I-526 petitions and it pulls them out as it sees fit, when it sees fit, and decides them in an arbitrary order." These allegations fall short. . . . Plaintiffs' allegations do not describe USCIS using a system other than its publicly announced availability-screened queue. USCIS does have a "line": petitions with available visas, processed in filing order by priority date. Plaintiffs do not allege that they were singled out for slower adjudication; plausible allegations to that effect might have alleviated the line-jumping concern. . . . Instead, Plaintiffs appear similarly situated to all other Form I-526 petitioners who are waiting for USCIS to clear its petition backlog.

80 F.4th at 343 (certain citations omitted). Because, as in *Da Costa*, Kamat seeks "individual, not systemic, relief[,]" the Court concludes that granting "this individual relief would necessarily come 'at the expense of other similarly situated applicants,' unlike 'broader relief' that would avoid 'line-jumping' concerns." *Id.* (quoting *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 192 (D.C. Cir. 2016)). Although Kamat is unsatisfied with USCIS's pace of adjudication, judicial relief would merely allow him to solve his individual problem "at the expense of other similarly situated applicants." *Burwell*, 812 F.3d at 192. The Ninth Circuit has cautioned against "interfer[ing] with [an agency's] discretion in prioritizing its activities and allocating its resources." *Vaz*, 33 F.4th at 1138; *see also Milligan v. Pompeo*, 502 F. Supp. 3d 302, 319 (D.D.C. 2020) ("[D]elays stemming from resource-allocation decisions simply do not lend themselves to 'judicial reordering[s] [of] agency priorities.'") (quoting *Bagherian v. Pompeo*,

442 F. Supp. 3d 87, 96 (D.D.C. 2020) (alterations in original)).[4]  For these reasons, the fourth *TRAC* factor weighs heavily against Kamat and in USCIS's favor.

5.      Sixth *TRAC* factor: Agency impropriety

*TRAC* factor six instructs that the Court "need not find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'"  *Telecomms. Rsch.*, 750 F.2d at 80 (quoting *Pub. Citizen Health Rsch. Grp. v. Comm'r, Food & Drug Admin.*, 740 F.2d 21, 34 (D.C. Cir. 1984)).  Kamat alleges that the delays in adjudication of his I-526 form is "because the USCIS adjudicated 271 EB-5 petitions ahead of them due to political favoritism towards Tryon."  Dkt. # 11 at 16 (citing Dkt. # 1 at 21–23 ¶¶ 103–118).

The Court determines that these allegations do not withstand Rule 12(b)(6) scrutiny.  First, the circumstances of the Tryon regional center, as explained above, occurred before Kamat filed his I-526 Form petition; these allegations therefore do not demonstrate that "USCIS has taken affirmative actions, unknown to the public, to purposefully delay" adjudication of Kamat's EB-5 petition."  Dkt. # 1 at 21 ¶ 104.  Kamat has not included any "factual content that allows the court to draw the reasonable inference" that USCIS engaged in any impropriety in delaying

---

[4] According to Kamat, USCIS's allocation of resources to its "Fraud Detection and National Security ('FDNS')" division is unlawful and contributed to the delay of his petition because "those resources must be used for adjudication."  Dkt. # 11 at 14–15 (citing Dkt. # 1 at 12–15 ¶¶ 67–74).  This argument is, at best, incorrect and—at worst—misleading.  Contrary to Kamat's position, the unambiguous text of the Homeland Security Act of 2002 does not preclude USCIS from allocating resources to investigations related to its adjudications.  *See* Pub. L. No. 107-296, § 451(b), 116 Stat. 2135 (2002).  Indeed, 6 U.S.C. § 112(a)(3) states that the Secretary of the Department of Homeland Security ("DHS") may delegate "[a]ll functions of all officers, employees, and organizational units of the Department[.]"  *See also* 8 C.F.R. § 2.1 (delegating "[a]ll authorities and functions" of DHS to administer immigration laws in the Secretary; and permitting "delegat[ion of] any such authority or function to any official, officer, or employee . . .").  Further, 6 U.S.C. § 271(a)(3) establishes broad authority for the USCIS Director, while other statutory provisions recognize USCIS's investigative capabilities.  *See* 6 U.S.C. § 273(a)(1) (directing USCIS to conduct investigations of allegations of misconduct and fraud involving USCIS employees); 6 U.S.C. § 273(a)(2) (directing USCIS to inspect USCIS operations).  For these reasons, the Court does not consider Kamat's allegations that USCIS has impermissibly allocated its resources on "investigations."

adjudication of his Form I-526 petition. *See Iqbal*, 556 U.S. at 678. Still, *TRAC* factor six directs the Court that an absence of allegations of impropriety does not weigh against Kamat, and thus, this factor weighs as neutral.

**IV**

**CONCLUSION**

The Court concludes that the first, third, fourth, and fifth *TRAC* factors favor USCIS; the second factor slightly favors Kamat; and the sixth factor does not influence the Court's analysis. For these reasons, the Court concludes that USCIS's delay of Kamat's Form I-526 petition is not unreasonable and he is not entitled to the relief he seeks under the APA. Accordingly, the Court GRANTS the motion to dismiss (Dkt. # 8) and DISMISSES the matter.

Dated this 30th day of January, 2024.

John H. Chun
United States District Judge